# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**04-1505**

**REGIONS BANK**

**VERSUS**

**NORRIS P. RADER OF LAFAYETTE, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 98747-B
HONORABLE PAUL JOSEPH DEMAHY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Jimmie C. Peters, Judges.

**AFFIRMED.**

**Warren D. Rush**
**Charles M. Rush**
**Rush, Rush and Calogero**
**P. O. Box 53713**
**Lafayette, LA 70505**
**Telephone: (337) 235-2425**
**COUNSEL FOR:**
   **Defendants/Appellants - Norris P. Rader, Sr. and Patsy Marsalis Rader**

**Jeffrey Ackermann**
**Durio, McGoffin, Stagg and Ackermann**
**220 Heymann Boulevard**
**Lafayette, LA 70503**
**Telephone: (337) 233-0300**
**COUNSEL FOR:**
   **Plaintiff/Appellee - Mega Properties, L.L.C.**

**Joseph L. Ferguson**
**124 W. Washington Street - Suite B**
**New Iberia, LA 70560**
**Telephone:  (337) 365-6789**
**COUNSEL FOR:**
**Defendant/Appellee - Sid Hebert, Sheriff**

**David Joseph Boneno**
**Louisiana Bankers Association**
**5555 Bankers Avenue**
**Baton Rouge, LA 70821**
**Telephone:  (225) 387-3282**
**COUNSEL FOR:**
**Other Appellee - Louisiana Bankers Association**

THIBODEAUX, Chief Judge.

In this case of an attempted purchase of litigious rights, Norris P. Rader, Sr. and Patsy Marsalis Rader appeal a trial court judgment which not only set a price at which they could purchase and thereby extinguish a litigious right which had been assigned to another entity by the original debt-holder, but also permitted Mega Properties, L.L.C., the assignee of the litigious right, to retain collateral purportedly owned by Mr. and Mrs. Rader. The collateral had been used to secure unpaid debts owed to Mega, not by Mr. and Mrs. Rader, but by other debtors who were not entitled to participate in the redemption. The Raders contest the price fixed by the trial court at which they could redeem the litigious right, and also assert that the trial court improperly permitted Mega to retain the collateral.

Because the retained collateral secured debts ineligible for redemption by Mr. and Mrs. Rader, the extinguishment of the Raders' own debt by redemption does not protect the collateral from seizure by Mega to satisfy the other outstanding debts. We, therefore, affirm the trial court's decision to differentiate the Raders' redemption of their own debts and Mega's ability to use collateral belonging to the Raders to satisfy debts of other parties.

I.

**ISSUES**

The Raders raise two related issues on appeal. The Raders first argue the trial court should not have surrendered to Mega certain property purportedly owned by the Raders which had been used as collateral to secure unpaid debts owed to Mega by Norris Rader, Inc. and Norris Rader of St. Martin, Inc. They next suggest the trial court fixed an incorrect price at which they could redeem the litigious right, as the

1

trial court did not adjust the price downwards to reflect proceeds Mega obtained when it sold Bank One stock belonging to Norris Rader, Sr. which had been used to secure debt of Norris Rader, Inc. and Norris Rader of St. Martin, Inc. The Raders argue this constitutes an impermissible windfall to Mega. Mega, in turn, has filed a Motion to Dismiss Appeal. In addition, the appeal taken from the August 28, 2003 summary judgment remains outstanding.

## II.

## **FACTS**

In August 2002, Regions Bank filed an action to obtain a judgment against certain makers and sureties of promissory notes which were in default, along with recognition of collateral mortgages and pledges of stock given as security on the notes. These makers and sureties included Norris Rader, Sr.; his wife, Patsy Marsalis Rader; Norris Rader, Inc.; and, Norris Rader of St. Martin, Inc. among others, a total of seven entities. The trial court confirmed a default judgment against all but Norris Rader, Sr. and his wife, Patsy Marsalis Rader (the Raders). In May 2003, Regions Bank filed a motion for summary judgment seeking to find the Raders liable for money due under three promissory notes, plus recognition of the security used to secure the debt. On August 28, 2003, the trial court granted the motion for summary judgment in an amount of over $3 million. The Raders appealed. In October 2003, Regions Bank assigned the rights to execute on the judgment and all of the supporting collateral to Mega Properties L.L.C. (Mega) for a price of $1.4 million. Mega was substituted for Regions Bank in the litigation.

Arguing that the assignment was a litigious right and, therefore, eligible for redemption by payment of the price Mega paid to purchase the interest, the Raders filed a motion to remand with the third circuit. The third circuit granted the motion,

2

requiring the trial court to determine whether the assignment constituted a litigious right and, if so, the redemption price at which the Raders would be able to extinguish the debt. The opinion also allowed the appeal to remain on the docket, so that the parties would not lose their docket preference. The trial court agreed that the assignment was a litigious right and determined that the redemption price for the Raders' personal liability was $200,000.00 each. The trial court also permitted Mega to retain the right to liquidate the existing collateral to satisfy the balance of the assignment, which was composed of non-litigious rights not eligible for redemption. To give effect to this ruling, the trial court lifted a temporary restraining order that the Raders had filed to prevent foreclosure on certain properties. The Raders filed a writ application to the third circuit, requesting that it stay the liquidation. The third circuit noted the Raders had set aside certain property to serve as collateral to secure loans of Norris Rader, Inc. and Norris Rader of St. Martin. This collateral did not secure the Raders' personal liability. As a result, while the Raders could repurchase their litigious rights for a total of $400,000.00, the repurchase did not immunize the collateral that secured debt of third parties from liquidation to satisfy that debt. The third circuit denied the writ in an unpublished opinion. *Regions Bank v. Norris Rader of Lafayette, Inc.*, 04-1520 (La.App. 3 Cir. 11/24/04) (unpublished).

III.

**LAW AND DISCUSSION**

Louisiana Civil Code Article 2652 governs the sale of litigious rights. A right is litigious "when it is contested in a suit already filed." When a debt-holder has assigned to another entity his right to enforce a debt owed to him, this article entitles the debtor to extinguish the obligation by paying to the assignee the price the assignee paid to receive that right. *See, e.g., Slocum-Stevens Ins. Agency, Inc. v. Int'l*

3

*Risk Consultants, Inc.*, 27,353 (La.App. 2 Cir. 12/11/95), 666 So.2d 352, *writ denied*, 96-102 (La. 3/8/96), 669 So.2d 399.

In their Motion to Remand, the Raders asserted their Article 2652 right to redeem, and asked the third circuit to remand the dispute to the trial court to fix the price at which they could repurchase and thereby extinguish the litigious right. The third circuit agreed to remand the case to the trial court "for the limited purpose of deciding whether the assignment constitutes a sale of a litigious right and, if so, the amount necessary for the Raders to redeem that right." *Regions Bank v. Norris Rader of Lafayette, Inc., et al.*, 03-1665, p. 4 (La.App. 3 Cir. 7/14/04), 879 So.2d 904, 906. After a hearing on September 30, 2004, the trial court issued a judgment dated October 5, 2004. The judgment found that the assignment from Regions Bank to Mega constituted a sale of both litigious and non-litigious rights. The personal obligations of Norris Rader, Sr. and Patsy Marsalis Rader composed the litigious rights portion of the assignment. The balance of the assignment was composed of obligations owed by the other entities that had defaulted on their debts to Regions Bank. These included Norris Rader, Inc. and Norris Rader of St. Martin, as well as other entities. Bankruptcy proceedings were already underway in relation to these entities. They were not contested and, therefore, were not litigious rights eligible for redemption by payment of Mega's purchase price.

Once the trial court had decided the issues required by the third circuit's remand, it addressed an outstanding Motion to Terminate Temporary Restraining Order filed by Mega to contest a TRO the Raders had obtained on March 19, 2004. The TRO prevented the liquidation of certain collateral which the Raders asserted they owned, but which had been used to secure debts of Norris Rader, Inc. and Norris Rader of St. Martin. The trial court held that all collateral that secured debts of Norris

4

Rader, Inc. and Norris Rader of St. Martin constituted security for the non-litigious rights that could not be redeemed by the Raders. Therefore, Mega was entitled to retain the collateral to satisfy the debts of these entities. The court required that all proceeds from any liquidation of the collateral be credited to the debts owed by those entities.

The Raders assert on appeal that by ruling on an issue not specified in the remand from the third circuit—the question of whether Mega could retain collateral to satisfy a debt owed by entities other than the Raders—the trial court exceeded the authority granted by the remand. The trial court's judgment, however, ruled on an additional, outstanding issue and therefore did not exceed the authority of the remand. The remand concerned the Raders' ability to redeem their individual obligations; the TRO concerned whether Mega could retain collateral that had been used to secure debts owed by parties other than the Raders to satisfy those debts. Because we agree with the trial court's finding that, regardless of whether the Raders owned the collateral, the collateral secured debt that they could not redeem, the Raders' argument that they own this collateral does not undermine the trial court's ruling on the TRO.

The Raders argue that the trial court erred in permitting Mega to retain the collateral. The Raders argue in their brief that the Raders did not cross-collateralize the security in question to secure obligations of Norris Rader, Inc., or other entities. As a result, they claim that when the redemption price fixed by the trial court has been paid, all the security pledged becomes free and clear of the litigious right purchased by Mega. In support of this statement, they cite the Judgments of August 28, 2003 and October 28, 2002, asserting that "no cross-collateralization was effected in those judgments." However, a review of the record shows that the

5

mortgages and Bank One stock secured the obligations of Norris Rader, Inc. and Norris Rader of St. Martin, *not* the Raders as sureties. The debt secured by the collateral mortgages is the debt of Norris Rader, Inc. on two of the three notes, and the debt of Norris Rader of St. Martin Inc. on the third note. There is a distinction between the obligations the Raders have under their personal guaranties, and the obligations secured by the mortgages and other security.

Next, the Raders rely on *Livingston State Bank & Trust Co. v. N.L. Fairchild*, 248 So.2d 14, 15 (La.App. 1 Cir.), *writ denied*, 259 La. 756, 252 So.2d 454 (La.1971), for the assertion that "when a judgment is had on a note, the latter is merged in the former" so that the collateral recognized in the judgment is merged in the judgment and their negotiability is extinguished. Although *Livingston v. Fairchild* is a 1971 case, it has never once been cited in Louisiana jurisprudence; it stands alone.

Finally, the Raders refer to *Luk-Shop, L.L.C. v. Riverwood LaPlace Associates, L.L.C.*, 01-2446 (La. 1/4/02), 802 So.2d 1291, to support their argument that the redemption of their obligation extinguished all rights to the mortgaged property. *Luk-Shop* held that the obligations to pay the debt evidenced by promissory notes, mortgages, and guaranties were litigious rights, permitting the debtor to extinguish the obligations by paying the price that the assignee paid for the assignment. Based on this, the Raders reason that once they have redeemed the litigious rights, all underlying obligations are extinguished and there would be no remaining claim on the debts and therefore no basis to execute on the collateral. The Raders' logic would be correct if the rights being redeemed included the debts held by Norris Rader, Inc. and Norris Rader of St. Martin. However, the Raders can only redeem contested debts, as required by La.Civ.Code art. 2652; the debts of Norris

6

Rader, Inc. and Norris Rader of St. Martin were not contested and cannot be the subject of this redemption. Therefore, the redemption of *their* obligation would extinguish rights to collateral securing *their* obligation, but the redemption of *their* obligation would not extinguish rights to collateral securing obligations of *other* debtors, regardless of whether or not the Raders owned the collateral.

The Raders also argue that permitting Mega to retain the collateral would be tantamount to permitting Mega to enjoy a windfall contrary to law. Louisiana Civil Code Article 2652 prohibits an assignee of a litigious right from making a profit. The assignee is only entitled to be reimbursed for the cost of the purchase of the right, plus earned interest. *Smith v. Cook*, 180 So. 469 (La.1937). Again, however, we must distinguish Mega as assignee of redeemable, litigious debt and Mega as assignee of unredeemable, non-litigious debt. The court determined that Mega paid $1.4 million for the total assignment of both litigious and non-litigious rights, and that the Raders' individual share amounted to $400,000.00. This leaves a balance of $1 million in non-litigious debt from entities not eligible to participate in the redemption. The retained collateral is to be credited to the non-litigious debt. In its role as an assignee of litigious rights, which are the individual debts of the Raders only, Mega is still to receive only $400,000.00 to satisfy those debts. Because the proceeds from the sale of stock are not being allocated to the satisfaction of the litigious debt, Mega is not enjoying a windfall.

Finally, the Raders assert that, when setting the redemption price for their litigious right, the trial court should have taken into consideration proceeds Mega realized when it liquidated certain stock that had been used as collateral, and reduced the redemption price accordingly. Mega sold 9,775 shares of Bank One stock which belonged to Norris Rader, Sr. The stock had been pledged to Regions

7

Bank as collateral securing debt borrowed by Norris Rader, Inc. and Norris Rader of St. Martin. The shares were sold on the open market for $404,980.00. The Raders now claim Mega should be ordered to acquire equivalent shares and deliver them to the Raders. We disagree. The proceeds from the liquidation of stock should not be credited to the Raders' personal debts. Although Norris Rader, Sr. owned the stock certificates, the stock was used to secure debt of Norris Rader, Inc. and Norris Rader of St. Martin. The proceeds from the liquidation should be credited to the debt of Norris Rader, Inc. and Norris Rader of St. Martin, and not to the Raders individually.

The Raders attempted to compare this situation to one in which a homeowner redeems his mortgage, stating that once the debt is extinguished via the redemption, the bank would be unable to execute on the home in addition to receiving the money from the redemption. This example is not analogous to what happened in this case. If the home had been used to secure an obligation exterior to the loan between the homeowner and the bank, the bank could still foreclose upon the house as collateral securing the other obligation.

IV.

**CONCLUSION**

For the above reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed to appellants Norris Rader, Sr. and Patsy Marsalis Rader.

**AFFIRMED.**

8